UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| K. STEPHEN TSINGAS AND CITY POWER MARKETING, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | 14 CIV _____ |
| | : | |
| v. | : | |
| | : | |
| FEDERAL ENERGY REGULATORY COMMISSION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AND FOR DECLARATORY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT....................................................................................................1

STATEMENT OF FACTS.......................................................................................................4

ARGUMENT........................................................................................................................5

   1.    There is a substantial likelihood that Plaintiffs will succeed on the merits..................6

        a.   There is an actual controversy permitting relief under the Declaratory
            Judgment Act..............................................................................................7

        b.   The proposed disclosures would violate the Commission's own Part 1b
            Rules Relating to Investigations...................................................................7

            i.   The Commission has not authorized public disclosure of the
                investigation.......................................................................................8

            ii.  Neither of the remaining Rule 1b.9 public disclosure triggers has
                been met............................................................................................10

        c.   The proposed disclosures would violate the Commission's Part 388 rules
            regarding Information and Requests................................................................10

        d.   The proposed disclosures would violate the Privacy Act.....................................11

        e.   Plaintiffs are entitled to relief under the Declaratory Judgment Act
            and/or the Administrative Procedures Act.........................................................12

        f.   Plaintiffs request that the Commission be required to file under seal
            conforms to case law on sealed filings.............................................................14

        g.   The Commission cannot articulate any reason why it must or should
            proceed publicly with its action to enforce administrative subpoenas in
            this nonpublic investigation...........................................................................16

   2.    Plaintiff will suffer irreparable harm in the absence of an injunction..........................18

   3.    An injunction will not substantially harm the Commission..........................................20

   4.    The public interest will be furthered by an injunction................................................20

CONCLUSION....................................................................................................................21

## TABLE OF AUTHORITIES

### CASES

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967).................................................13

*Am. Fed'n of Labor & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 177 F. Sub
   2d 48 (D.D.C. 2001) *aff'd*,333 F.3d 168 (D.C. Cir. 2003)..........................................17

*Beacon Const. Co., Inc. v. Matco Elec. Co., Inc.*, 521 F.2d 392 (2d Cir. 1975)...........................12

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979)..........................................................13

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995)........................6

*Commodity Futures Trading Commission v. McGraw-Hill Companies*, 507 F.Supp.2d 45
   (D.D.C. 2007).......................................................................................16

*Davenport v. International Bhd. Of Teamsters, AFL-CIO*, 166 F.3d 356 (D.C. Cir. 1999)...........6

*DBI Architects, P.C. v. American Exp. Travel Related Servs. Co., Inc.*,462 F. Supp. 2d 1
   (D.D.C. 2006).......................................................................................14

*Doe v. Chao*, 435 F.3d 492 (4th Cir. 2006)...............................................................13

*Doe v. Stephens*, 851 F.2d 1457 (D.C. Cir. 1988).......................................................12

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)........................................................13

*Gem Cnty Mosquito Abatement District v. EPA*, 398 F. Supp. 2d 1 (D.D. C 2005)....................13

*In re Sealed Case*, 237 F.3d 657 (D.C. Cir. 2001)..................................................17, 19

*Jacksonville Port Authority v. Adams*, 556 F.2d 52 (D.C. Cir. 1977)..................................19

*Johnson v. Greater Southeast Comm. Hosp. Corp.*, 951 F.2d 1268 (D.C. Cir. 1991).............14, 15

*Kingman Park Civic Ass'n v. Gray,* CV 13-990 (CKK), 2013 U.S. Dist. LEXIS 105413,
   (D.D.C. July 29, 2013)...............................................................................6

*Klayman v. Obama*, CV 13-0851 (RJL), 2013 WL 6571596 (D.D.C. Dec. 16, 2013)...........6

*Long Island Lighting Co. v. County of Suffolk*, 628 F. Supp. 6554 (E.D.N.Y. 1986)...................19

*Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67 (D.D.C. 2001)....................................6

*Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C.Cir. 1998)...........................6, 19

*National Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34 (D.D.C. 2011)...................................13

*Real Truth About Obama, Inc., v. Federal Election Comm'n*, 357 F.3d 342 (4th Cir. 2009).........6

*Rice v. United States*, 245 F.R.D. 3 (D.D.C. 2007)......................................................13

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).........................................14

*Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1 (D.D.C. 1999).........................5

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)......................................6

**FERC ORDERS**

*Enforcement of Statutes, Regulations & Orders*, 123 FERC ¶ 61,156 (May 15, 2008)..........7, 8, 9

*Enforcement of Statutes, Regulations, and Orders*, 129 ¶ 61,247 (Dec. 17, 2009)....................8, 9

*PJM Interconnection, LLC PJM Interconnection, LLC, Midwest Indep. Transmission Sys. Operator, Inc., Commonwealth Edison Co., PJM Interconnection, LLC*, 109 FERC ¶61,094 (Oct. 28, 2004)........................................................11

*Wholesale Competition in Regions with Organized Elec. Markets*, 125 FERC ¶ 61071 (Oct. 17, 2008)..............................................................10

**STATUTES**

5 U.S.C. §§ 522a, 702, 706 et seq........................................................12

28 U.S.C. § 2201 et seq.......................................................................7

**REGULATIONS**

18 C.F.R. § 1.9......................................................................8

18 C.F.R. § 388.107(g)..........................................................11

**RULES**

Fed. R. Civ. P. 5.2(d).............................................................14

Fed. R. Civ. P. 65..................................................................1

## PRELIMINARY STATEMENT

Plaintiffs K. Stephen Tsingas ("Tsingas") and City Power Marketing, LLC ("CPM"), by and through their attorneys, Ifrah PLLC and McGuireWoods LLP, respectfully submit this memorandum of law, pursuant to Federal Rule of Civil Procedure 65, in support of this motion for a temporary restraining order and a preliminary injunction based on their complaint seeking declaratory judgment. The Court should issue an order in the form submitted herewith barring the Federal Energy Regulatory Commission (the "Commission" or "FERC") from publicly filing a proceeding seeking enforcement of its administrative subpoenas, and instead requiring that the Commission file that proceeding under seal.

Tsingas and CPM (collectively "Plaintiffs") are subjects of a three-year ongoing nonpublic investigation by the Commission. Consistent with the Commission's own regulations, policy statements, and common practice, although the existence of the investigation is public, the identities of the subjects of the investigation are not public. Likewise, the factual allegations – in this case, relating to claims of market manipulation and false statements during the investigation – also remain undisclosed to the public. The information, testimony, and documents provided by Plaintiffs during the investigation are also treated as confidential and nonpublic.

Plaintiffs have cooperated, extensively and materially, with the non-public investigation, providing many documents, narrative answers to written questions, and producing large quantities of trading and other data. Mr. Tsingas voluntarily travelled to Washington, D.C. to appear before FERC Staff for investigative testimony.   In the course of responding to numerous demands for information and documents during the nonpublic investigation, Plaintiffs have asserted a small number of good faith objections to the scope of those demands. Counsel for

Plaintiffs engaged in a good faith effort to resolve those objections but was unsuccessful in doing so. Plaintiffs sought a protective order from the Commission through the filing of a nonpublic motion, but that motion was denied and Commission staff continued to press additional discovery demands (through subpoenas and more informally) which Plaintiffs found objectionable. However, because the Commission's administrative subpoenas are not self-enforcing, Plaintiffs could not seek relief from this Court. Instead, Plaintiffs can only defend against a proceeding, if any, filed by the Commission seeking to enforce the subpoenas.

The Commission has informed Plaintiffs unequivocally that it intends to file such an action publicly in federal district court– most likely within the next week. The Commission has agreed to give Plaintiffs prior notice when they are prepared to file, and to give Plaintiffs the opportunity to file this action before the Commission acts. Counsel informed the Commission that Plaintiffs did not intend to seek relief *ex parte*, and the Commission has stated that it wishes the opportunity to respond to Plaintiffs' request for relief. The Commission staff has stated that it would file any such response under seal, as Plaintiffs requested.

Plaintiffs do not challenge here the right of the Commission to seek subpoena enforcement in this Court, nor does this action address the merits of the Commission's claim that it is entitled to enforce its subpoenas. Rather, the limited purpose of this action and this motion is to prevent the Commission from publicly disclosing the fact that Plaintiffs are under investigation, the allegations that are under investigation, and the information and documents that Plaintiffs have provided on a confidential basis as part of the nonpublic investigation.

The Commission has informed Plaintiffs that, in its subpoena enforcement action, it plans to disclose information obtained during the course of its non-public investigation. The Commission's own regulations specifically provide for the continued confidentiality of all of

- 2 -

these aspects of this non-public investigation, and the records that we expect the Commission to recite are exempt from disclosure. Such public disclosure is also at odds with the Privacy Act. Given the Commission's insistence that the non-public investigation of Plaintiffs remains ongoing, the Commission's decision to make public disclosures is arbitrary and capricious, and in violation of the law, and therefore constitutes a violation of the Administrative Procedures Act.

Plaintiffs are entitled to a temporary restraining order and preliminary injunction because the Commission's insistence on a public filing of its subpoena enforcement proceeding will cause irreparable harm to CPM and Mr. Tsingas by publicly disclosing serious allegations of wrongdoing – unproven and that CPM and Mr. Tsingas deny – at a time when the Commission states it is still investigating the merits of those allegations.  On the other hand, the Commission will suffer no harm or prejudice whatsoever by proceeding with its subpoena enforcement action under seal.

Given the clarity of the Commission's own regulations on maintaining the nonpublic character of its investigation, the Commission's insistence on public disclosure places CPM and Mr. Tsingas in the unfair position of having to abandon their good faith objections to the scope of the subject subpoenas, in order to maintain their right to confidentiality at this stage of the proceedings.  The Court should not permit the potential for publicity to be used against Plaintiffs in this manner.  Rather, the Court should require that the Commission file its proceeding under seal, so that the Court may resolve the parties' dispute over the scope of the subpoenas without disturbing the nonpublic character of the ongoing investigation.

## STATEMENT OF FACTS[1]

Pursuant to the Commission's August 2010 *Order of Non-Public Formal Investigation*

(the "Order"), Plaintiffs have been subjects of an ongoing nonpublic investigation by the FERC

for nearly three and a half years.  As of the time of this filing, the Order is the only public

document relating to this investigation as it pertains to Plaintiffs, and it discloses neither the

subjects' identities nor any information gathered pursuant to the investigation.[2] As such, the fact

that Plaintiffs' are targets of the investigation and the information, testimony, and documents

provided by Plaintiffs during the investigation has thus far, been deemed non-public and received

confidential treatment.[3]

---

[1] The facts as set forth in the Complaint, and the Declaration of A. Jeff Ifrah (the "Ifrah Decl."), in support of this motion are incorporated here by reference as if set forth herein.

[2] Another entity that is a subject of this investigation (unrelated to Plaintiffs) entered into a settlement with the Commission.  That settlement is public but makes no mention of Plaintiffs or their documents or information. *In re PJM Up-To Congestion Transactions,* 142 FERC ¶ 61,088 (February 1, 2013) (Order Approving Stipulation and Consent Agreement)

[3] Aside from the settlement referenced in footnote 3, *supra,* the first paragraph of the Order is the only portion of the public record that makes any mention of the subject matter of the investigation. It reads as follows in its entirety:

> It is a matter of public record that PJM Interconnection, L.L.C. (PJM) and its independent market monitor, Monitoring Analytics, LLC, recently observed patterns of behavior associated with large volumes of Up-To Congestion transactions in PJM markets. . . . Specifically, PJM alleges that "trades were undertaken with the intent of manipulating PJM market rules so as to gain an allocation of marginal loss surplus revenue without any corresponding usage of the transmission system."

Order (Ifrah Decl., Exhibit A) (footnotes omitted).  A footnote in the Order references the "PJM Interconnection, L.L.C Members Committee meeting of August 12, 2010" and states that "[c]opies of presentations given at the meeting are available at http://www. Pjm.com/committees-and-groups/committees/mc.aspx#4."  *Id.*  These minutes do not identify by name any of the market participants engaging in the alleged "patterns of behavior."

During the course of this ongoing investigation, and specifically pursuant to the Order, staff in the Commission's Office of Enforcement ("Enforcement Staff") has issued scores of demands for information and documents. The responsive information and documents submitted by Plaintiffs to Staff specifically stated that such submissions were being made subject to a request for confidential treatment pursuant to 18 C.F.R. §§ 1b.9, 388.112.

In the course of responding, Plaintiffs have asserted a small number of good faith objections to the scope of those demands. On January 30, 2014, Enforcement Staff notified Plaintiffs' of Staff's intent to file a subpoena enforcement action *publicly* and disclose in that public filing information obtained during the course of the non-public investigation. Plaintiffs objected in writing to the Commission's intended public disclosure. Nonetheless, Staff denied Plaintiffs' request for confidential treatment and maintained its intent to publicly file a subpoena enforcement action in federal district court. In doing so, Staff asserted that "agency subpoena enforcement actions are routinely filed publicly" and that, "in general, it [is] in the public interest for government litigation to be public." *See* Email dated Feb. 5, 2014 from T. Olson (Ifrah Decl., Exhibit C).

## ARGUMENT

Plaintiffs are entitled to a Temporary Restraining Order and a Preliminary Injunction because without the intervention of the Court, the Commission has indicated it will file subpoena enforcement action publicly, causing irreparable harm to CPM and Tsingas. Courts consider the same factors when ruling on a motion for a temporary restraining order and a motion for a preliminary injunction. *See Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F.Supp.2d 1, 7 n.5 (D.D.C. 1999). For this reason, Plaintiffs present the arguments in support of both motions together.

A court has the power to issue a temporary restraining order or a preliminary injunction

only when the moving party demonstrates that:

> (1) there is a substantial likelihood plaintiff will succeed on the
> merits; (2) plaintiff will be irreparably injured if an injunction is
> not granted; (3) an injunction will not substantially injure the other
> party; and (4) the public interest will be furthered by an injunction.

*Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001) (quoting *Mova*

*Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066, (D.C. Cir. 1998)). Courts do not

consider these factors "in isolation from one another," and no one factor is dispositive as to

whether injunctive relief will be granted. *Id.* (citing *CityFed Fin. Corp. v. Office of Thrift*

*Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). Instead, the factors relate to each other on a

"sliding scale," and courts applying the four factors must balance them against each other."

*Davenport v. International Bhd. Of Teamsters, AFL-CIO*, 166 F.3d 356, 361 (D.C. Cir. 1999).[4]

Considering these factors here, the Court should conclude that Plaintiffs are entitled to the relief

they seek.

1. **There is a substantial likelihood that Plaintiffs will succeed on the merits.**

The Court should find that Plaintiffs are likely to succeed on the merits of their claim

seeking a declaratory judgment that the Commission's decision to make a public disclosure here

---

[4] Courts in this Circuit, and others, have traditionally applied a "sliding scale" approach, which has been called into question by the Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). *See Real Truth About Obama, Inc., v. Federal Election Comm'n*, 357 F.3d 342, 347 (4th Cir. 2009) (interpreting *Winter* as requiring a separate showing of each individual factor). This Circuit has not yet issued clear guidance on this issue, and district courts faced with this issue have continued to apply the "sliding scale" approach. *See, e.g., Klayman v. Obama*, CV 13-0851 (RJL), 2013 WL 6571596 (D.D.C. Dec. 16, 2013); *Kingman Park Civic Ass'n v. Gray*, CV 13-990 (CKK), 2013 U.S. Dist. LEXIS 105413, (D.D.C. July 29, 2013). In this case, the court will not need to resolve the circuit split, as Plaintiffs make a clear showing of each element of the four-element test.

violates the Administrative Procedures Act because it is arbitrary and capricious, and violates the Commission's own regulations as well as the Privacy Act.

### a.    There is an actual controversy permitting relief under the Declaratory Judgment Act.

The Declaratory Judgment Act provides that a Court may "declare the rights and other legal relations of any interested party seeking such declaration," provided that an "actual controversy" exists. 28 U.S.C. § 2201(a). The Commission has stated unequivocally that unless Plaintiffs abandon their good faith objections to the scope of certain administrative subpoenas, the Commission will seek enforcement of the subpoena in federal district court. As described in the Affidavit of A. Jeff Ifrah, submitted herewith, Plaintiffs and counsel have repeatedly asked the Commission to seek enforcement non-publicly by filing under seal, but the Commission has refused to do so. There can be no question that this constitutes an "actual controversy" for purposes of the Declaratory Judgment Act. This controversy arises from the Commission's own regulations providing for confidentiality of nonpublic investigations, as well as the application of the Privacy Act, 5 U.S.C. § 552a, which also prohibits the Commission's intended disclosure.

### b.    The proposed disclosures would violate the Commission's own Part 1b Rules Relating to Investigations.

The Commission issued its *Order of Non-public, Formal Investigation* – which authorized Enforcement Staff to conduct this investigation and equipped it with subpoena power "[p]ursuant to Federal Power Act sections 201, 307, and 309 (as amended by the Energy Policy Act of 2005) and Part 1b of the Commission's regulations." (Ifrah Decl., Exhibit A). Therefore, "all information and documentation received during [such] investigation, as well as the existence of [such] investigation, is treated as non-public information." *Enforcement of Statutes, Regulations & Orders*, 123 FERC ¶ 61156 (May 15, 2008) (citing 18 C.F.R §§ 1b.9(a)-(c), 388.122). Regulation 1b.9 of the Commission's Rules Relating to Investigations provides that

non-public investigations are to remain non-public until one of three events occurs: (1) the Commission authorizes public disclosure of the investigation; (2) the investigation or documents are made public during the course of an adjudicatory proceeding; or (3) disclosure is required by the Freedom of Information Act.  18 C.F.R. § 1b.9.

        **i.**      **The Commission has not authorized public disclosure of the investigation.**

In its Revised Policy Statement on Enforcement, *Enforcement of Statutes, Regulations and Orders*, 123 FERC ¶ 61,156 (2008), the Commission observed with approval its common practice of maintaining the confidentiality of ongoing non-public investigations. The Commission noted that many, if not most, of the investigations authorized by the Commission are closed without any action by the Commission, and that, in such cases, "the investigation remains non-public in all but rare circumstances." *Enforcement of Statutes, Regulations & Orders*, 123 FERC ¶ 61,156 (May 15, 2008) (citing 18 C.F.R. § 1b.9 (2007)).

In its 2009 Order Authorizing Secretary to Issue Staff's Preliminary Notice of Violations ("2009 Order"), the Commission noted that "[g]enerally, there [was] no public notification of investigations until either the investigation is resolved through settlement or the Commission issues an order to show cause." *Enforcement of Statutes, Regulations, and Orders*, 129 ¶ 61,247, at ¶ 3 (2009).  With the 2009 Order, in light of its ongoing efforts to strike a balance a subject's interest in confidentiality and the promotion of transparency, the Commission slightly altered its practices by allowing for earlier publication. In doing so, the Commission made clear its continued commitment to maintaining confidentiality of nonpublic investigations in other circumstances and outlined specific parameters for such public disclosure:

> The public disclosure in the Notice issued by the Secretary will include: (1) the identity of the entity or entities that are the subject of the investigation; (2) the time and the place of the alleged conduct; (3) the rules, regulations, statutes or

> orders that staff alleges were violated; and (4) a concise description of the alleged wrongful conduct. The Notice should be sufficient to inform members. In the event enforcement staff decides to terminate an investigation after a Notice has been issued, the Commission authorizes the Secretary, upon direction of the Director of the Office of Enforcement, to issue a public notice of termination of investigation.

*Id.* at ¶ 7. The Commission also took care to note that the "timing of any public disclosure of an investigation conducted under Part 1b prior to the conclusion of the investigation is important because premature disclosure could adversely affect the reputation of the subject." *Id.* at ¶5.

Here the Commission has not issued a Notice of Violations nor have Plaintiffs been advised that the Commission has authorized public disclosure of any details of the investigation. By the Commission's general practice, those disclosures have occurred when the Commission has concluded its investigation and made a determination to pursue public enforcement action or settlement. But the Commission staff has steadfastly maintained that the Commission has not yet reached that stage. And the Commission does not need to make public disclosure and thus public disclosure serves no purpose. The mere fact that the Commission must seek judicial intervention to enforce its subpoenas, does not require public disclosure and should not override the Commission's stated commitment to maintaining confidentiality of nonpublic investigations, given that it has the ready-made and well-established alternative to file under seal. In its 2008 pronouncement, the Commission stressed "that a subject's good faith exercise of its rights under the relevant statutes and [Commission] regulations, including but not limited to good faith disputes regarding discovery or settlement issues, will not be considered in determining whether the subject of an investigation has cooperated." *Enforcement of Statutes, Regulations, and Orders*, 123 ¶ 61156, at ¶ 22 (May 15, 2008). The Commission should not be permitted to punish Plaintiffs for the assertion of good faith objections by making a public disclosure of information that would otherwise be kept confidential.

ii.    **Neither of the remaining Rule 1b.9 public disclosure triggers has been met.**

Plaintiffs do not dispute that these regulations do contemplate that there will be a point in

time – when any of the listed triggering events occur – when confidential information from a

nonpublic investigation will be publicly disclosed. But here, none of those events have occurred.

The documents and information have not been made a matter of public record in a previous

adjudicatory proceeding, and there has been no Freedom of Information Act request.[5]  To the

contrary, the Commission has unequivocally stated its intent to continue the nonpublic

investigation in that status following its intended subpoena enforcement proceeding. Therefore,

disclosure of Plaintiffs' identities as the subjects of the investigation, the disclosure of the

allegations underlying the investigation, and the disclosure of facts, testimony and documents

obtained during the investigation would be a violation of the Commission's own regulations.

c.    **The proposed disclosures would violate the Commission's Part 388 rules
regarding Information and Requests.**

Regulation 388.107 of the Commission's procedural rules on Information and Requests

provides further guidance regarding the nondisclosure of confidential, non-public information,

and further reinforces that the Commission's proposed disclosure here would violate its own

regulations.  Regulation 388.107 states that certain categories of records are "exempt from

disclosure," including "[r]ecords or information compiled for law enforcement purposes, but

only to the extent that the production of such law enforcement records or information: (1) Could

reasonably be expected to interfere with enforcement proceedings; (2) Would deprive a person of

---

[5] The Commission has clarified that the adjudicatory proceeding trigger described in subpart (2)
refers to publication of the investigation or documents in a *previous* adjudicatory proceeding.
*Wholesale Competition in Regions with Organized Elec. Markets*, 125 FERC ¶ 61071 (Oct. 17,
2008)

a right to a fair trial or an impartial adjudication; or (3) Could reasonably be expected to constitute an unwarranted invasion of personal privacy... ."  18 C.F.R.  § 388.107(g).[6]

It is well established that "the Commission's rules show particular solicitude for the protection of information concerning individuals obtained during investigations, providing that confidentiality is appropriate when disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy." *PJM Interconnection, LLC PJM Interconnection, LLC, Midwest Indep. Transmission Sys. Operator, Inc., Commonwealth Edison Co., PJM Interconnection, LLC*, 109 FERC ¶ 61,094 at P 59 (Oct. 28, 2004) (citing 18 C.F.R. 388.107(g)). Throughout the course of this ongoing investigation, Plaintiffs have provided responses to Enforcement Staff's data requests and investigatory subpoenas with the intent that those responses would remain confidential and non-public. All of these documents fall under the protections of Regulation 388.107, as they were compiled for law enforcement purposes. Further, Plaintiffs submissions specifically requested confidential treatment pursuant to 18 C.F.R. § 388.112.  Many of these documents submitted to Enforcement Staff are of a sensitive and confidential nature, including without limitation, Mr. Tsingas' personal tax returns and CPM's confidential and sensitive business information. As such, disclosure of such documents and the information contained therein will constitute an unwarranted invasion of personal privacy.

### d.    The proposed disclosures would violate the Privacy Act.

These intended disclosures would also violate  the Privacy Act, 5 U.S.C. § 552a (2012), which prevents a government agency from disclosing records maintained in a system of records

---

[6] By parroting the language of the section 5 U.S.C. § 552(b) Freedom of Information Act exemptions, rule 388.107 expands the scope of those confidentiality protections beyond instances of FOIA requests.

without prior written consent from the individual to whom the record pertains , unless certain conditions are met.   Under the definitions section of the Privacy Act, the documents submitted by Plaintiff and the investigation itself qualify as "records," and the Commission surely maintains the records in a "system of records," where Plaintiffs' documents would be retrievable using Plaintiffs' identity. 5 U.S.C. §§ 522a (a)(4), (5).   Here, the Commission has been collecting Plaintiffs' records for three years, maintaining them in a system of records identifiable by Plaintiffs' names.

While the Act allows for the disclosure of agency-held records in several circumstances, none of those apply here. 5 U.S.C. § 552a(b).   The Privacy Act creates a civil remedy for individuals that suffer an adverse effect from the improper disclosure of their records.   5 U.S.C. § 552a(g)(1)(D).   The anticipated release of Plaintiffs' records would cause irreparable harm, including damage to their business reputations and goodwill, which cannot be monetized.

**e.      Plaintiffs are entitled to relief under the Declaratory Judgment Act and/or the Administrative Procedures Act.**

The Declaratory Judgment Act grants CPM and Mr. Tsingas the right to seek a declaration of their legal rights where, as here, it is clear that those rights will be infringed absent judicial intervention. *Beacon Const. Co., Inc. v. Matco Elec. Co., Inc.*, 521 F.2d 392, 397 (2d Cir. 1975). Alternatively, declaratory relief for these violations is available under the Administrative Procedure Act. *Doe v. Stephens*, 851 F.2d 1457, 1465–66 (D.C. Cir. 1988). Plaintiffs are likely to succeed on the merits of their claim seeking a declaratory judgment here.

Section 10(a) of the Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . , is entitled to judicial review thereof." 5 U.S.C. § 702. The APA provides that the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . .

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.
§ 706(2)(A). Here, the Commission's staff's unequivocal statement that it will take action to
make a public disclosure constitutes "final agency action for which there is no other adequate
remedy in a court" and it is therefore subject to APA review because "the agency has completed
its decision[-]making process, and . . . the result of that process is one that will directly affect the
parties." *Franklin v. Massachusetts*, 505 U.S. 788, 796-97 (1992).[7]

   In this regard, the Commission's action is similar to the decision by the Environmental
Protection Agency at issue in *National Mining Ass'n v. Jackson*, 768 F.Supp.2d 34 (D.D.C.
2011).  In *National Mining*, this Court considered an APA challenge to a decision by the EPA to
subject the plaintiff's permit application for coal mining operations to a more stringent level of
review.  768 F.Supp.2d at 40.  This Court rejected the argument that this decision was not
"final" for purposes of the APA because the EPA's actual consideration of the permit application
was ongoing, and the EPA had not denied the permit application.  768 F.Supp.2d at 39-40.
Noting that the "finality" element of APA review "is interpreted in a 'pragmatic way' ", the
Court found that element was satisfied.  768 F.Supp.2d at 45 (quoting *Gem Cnty Mosquito
Abatement District v. EPA*, 398 F. Supp. 2d 1, 11 (D.D. C 2005)).

   In this case, the Commission's action of making a public disclosure of this investigation
will similarly have an "immediate" and "direct effect" on the daily activities and business of
Plaintiffs. *Franklin*, 505 U.S. at 796 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136,

---

[7] Plaintiffs are entitled to relief under the APA even though the Commission's regulations do not
provide for a private right of action for violations thereof, and even though the Privacy Act itself
provides for no private right of action for injunctive relief. *Rice v. United States*, 245 F.R.D. 3,7
(D.D.C. 2007) (citing *Doe v. Chao*, 435 F.3d 492, 504 (4th Cir. 2006)). *See also Chrysler Corp.
v. Brown*, 441 U.D. 281, 317-19 (1979) (grant of injunctive relief to prevent violations of Trade
Secrets Act could rest on § 10(a) of the APA even though the underlying enactment gave rise to
no private right of action for damages).

152 (1967)).  The decision is not an interim measure that can later be undone.  Rather, once the

Plaintiffs' status as subjects of the investigation and the underlying unproven allegations are

disclosed, the harm imposed on the Plaintiffs will be irreparable.  Like the EPA decision in

*National Mining*, the Commission's action here is ripe for APA review.

> **f.      Plaintiff's request that the Commission be required to file under seal conforms to case law on sealed filings.**

Notwithstanding the presumption in favor of public access to judicial proceedings, Rule

5.2(d) of the Federal Rules of Civil Procedure  gives the court the power to "order that a filing be

made under seal" where the party's interest in maintaining the privacy or confidentiality of the

proceeding outweighs the public's interest.  *See DBI Architects, P.C. v. American Exp. Travel

Related Servs. Co., Inc,.* 462 F. Supp. 2d 1, 7–8 (D.D.C. 2006).  Here, all six of the factors well-

established in the D.C. Circuit are fully satisfied.  *See United States v. Hubbard*, 650 F.2d 293,

317–22 (D.C. Cir. 1980) (setting forth the six-factor test).  *See also DBI Architects, P.C.*, 462 F.

Supp. 2d at 7–8 (*Hubbard* test applied with equal weight where civil plaintiffs petition the court

to seal pleadings, motions, or an entire case).

First, there is virtually no "need for public access to the documents at issue." *Johnson v.

Greater Southeast Comm. Hosp. Corp.*, 951 F.2d 1268, 1277 n.14 (D.C. Cir. 1991) (citing

*Hubbard*, 650 F.2d at 317–22).  Given that the Commission insists that its investigation is

ongoing, and given that the allegations against CPM and Mr. Tsingas are unproven, it is difficult

to imagine how the Commission could articulate any need for the public to know that Plaintiffs

are accused of this misconduct or to know the contents of the documents that CPM and Mr.

Tsingas have produced in response to investigative demands. For example, what interest could

the public possibly have in the contents of Mr. Tsingas' personal income tax returns?

Second, the question of "the extent to which the public had access to the documents prior to the sealing order," *id.*, likewise weighs in favor of Plaintiffs' request for relief. The Commission's nonpublic investigation of CPM and Mr. Tsingas has never been disclosed to the public, and the public has had no access to any information or documents produced in response to investigative demands.

Third, the fact that CPM and Mr. Tsingas have objected also weighs in favor of the sealing of the Commission's subpoena enforcement proceeding. *Id.* (describing third factor as "the fact that a party has objected to disclosure and the identity of that party"). The very fact that a party has objected to disclosure is a factor favoring sealing, and the fact that CPM and Mr. Tsingas have a strong interest in the continued confidentiality of the information also supports Plaintiffs' claim for relief.

Fourth, the "strength of the property and privacy interests involved" here, *id.*, similarly supports sealing of the Commission's proceeding. Disclosure of the fact that CPM and Mr. Tsingas are under investigation for serious allegations of wrongful conduct would disrupt Mr. Tsingas' life, both professional and private, as well as the daily business activities of CPM. This concern dovetails into the fifth element considered by courts, "the possibility of prejudice to those opposing disclosure." *Id.* The Commission's continuation of its nonpublic investigation is the clearest possible signal that CPM and Mr. Tsingas are entitled to the protection of that nonpublic status – a practice before the Commission premised on the idea that public disclosure of allegations that have not been fully investigated is unfairly prejudicial to the subjects of those investigations. The public disclosure of these allegations and the fact that the Commission is investigating them would unquestionably prejudice CPM and Mr. Tsingas.

The final *Hubbard* factor – "the purposes for which the documents were introduced" – also weighs in favor of sealing. The sole purpose for which the Commission intends to make its filing in the District Court is to obtain compliance with an administrative subpoena in an ongoing nonpublic investigation. Sealing – which will avoid public disclosure – is entirely consistent with that purpose. In addition, to require that the Commission file its action for subpoena compliance under seal will in no manner or degree prejudice the Commission in its effort to compel CPM and Mr. Tsingas to respond to its subpoenas. There is nothing about sealing that will interfere with the Commission's presentation of whatever facts and legal arguments it has in favor of compulsion and, if they are more persuasive the Court than the objections raised by CPM and Mr. Tsingas, the Court is fully capable of issuing an order under seal that compels Plaintiffs to comply.

   g.   **The Commission cannot articulate any reason why it must or should proceed publicly with its action to enforce administrative subpoenas in this nonpublic investigation.**

   In response to Plaintiffs' efforts to persuade the Commission to proceed under seal here, Enforcement Staff asserted two grounds for its refusal: that "agency subpoena enforcement actions are routinely filed publicly" and that, "in general, it [is] in the public interest for government litigation to be public." (Ifrah Decl., Exhibit C). Neither of these grounds are persuasive.

   The assertion that agency subpoena enforcement actions are routinely filed publicly is not universally true and, in any case, irrelevant. Research has revealed at least one reported decision noting the decision by the Commodity Futures Trading Commission to file such an action under seal in order to avoid revealing the identity of the subject of the investigation. *See Commodity Futures Trading Commission v. McGraw-Hill Companies*, 507 F.Supp.2d 45, 48 n.2 (D.D.C.

- 16 -

2007). There may be other similar reported cases, but the absence of such reported cases would not be surprising: If, in fact, the matters were litigated under seal and the resulting orders were under seal, there would be no reported opinion in such matters.

In addition, even if it were true that agencies "routinely" proceed with public filings in these circumstances, that is no answer to the conclusion that the disclosure that would result is a violation of law. Indeed, the Court of Appeals for this Circuit specifically rejected such an argument by the Federal Election Commission ("FEC") in finding that its subpoena enforcement action should indeed have been filed under seal. *In re Sealed Case*, 237 F.3d 657, 670 (D.C. Cir. 2001). In a subsequent case, this court repudiated the Federal Election Commission's twenty-five year "practice" of making available to the public the full investigatory record relating to a complaint once the complaint had been resolved. *Am. Fed'n of Labor & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 177 F. Sub 2d 48, 63 (D.D.C. 2001) *aff'd*, 333 F.3d 168 (D.C. Cir. 2003) (citing *In re Sealed Case* and noting that "the mere practice of placing any investigatory file on public record is not entitled to judicial deference, especially when it violates the statute and regulations at issue.") Likewise, the Commission's reliance here on the fact that has, in the past, filed subpoena compliance actions publicly misses the point. If the Commission's practice of doing so is illegal, it should not be permitted to continue to do so.

The suggestion that the public has an interest in government litigation is likewise unpersuasive in that it claims too much. As the Court knows, government litigation relating to confidential matters – such as grand juries – is routinely conducted out of the public's eye, and the authority for doing so (and the propriety of doing so) is indisputable. If the Commission is as committed as it claims to be in protecting against public disclosure about its nonpublic

investigations, it should not be able to make an arbitrary and capricious decision in violation of the law to abandon those protections.

**2.      Plaintiffs will suffer irreparable harm in the absence of an injunction.**

Unless the Court issues the TRO sought by Plaintiffs, the Commission will file its subpoena enforcement action publicly, thrusting Plaintiffs' non-public investigation into the public eye. To date, neither Mr. Tsingas nor CPM have been identified publicly as subjects of the Commission's non-public investigation, and they have submitted discovery materials to Enforcement Staff expressly subject to and in reliance upon confidentiality protections. Many of the documents submitted by Plaintiffs to Staff are of a sensitive and confidential nature, including without limitation, Mr. Tsingas' personal tax returns and CPM's confidential and sensitive business information, the release of which would irreparably damage Plaintiffs' competitive advantage in the energy trading industry.

Additionally, during the course of its non-public investigation, the Commission has

██████████████████████████████████████████████████████████████. It is Plaintiffs' understanding that ██████████████████ ████████ ████ ██████████ ████████ █████████████████ ██████████████████████████████████ ████████ █████████ █████████ █████ ████ ██ █████ █████████ █████████ ██████ ████████ ███████████ █████ █████████ █████ ████████████████████████████ ████ ████ ████ █████████████████. In September 2013, Enforcement Staff issued a letter to Plaintiffs presenting its preliminary findings. The letter used ████████████████████████ to support Enforcement Staff's allegations of

wrongdoing by Plaintiffs. It appears likely that the subject matter of the Commission's

impending enforcement action will relate, in large part, to Staff's investigation into

▮▮▮▮▮. As such, confidential treatment of any Commission filing is also imperative ▮▮▮▮



    In addition, there is a substantial likelihood that if the Commission files publicly, news of

the filing, and the specific factual allegations alleged therein, will be publicized by the energy

trading publications, such as *Platts Energy Daily* and *Inside FERC* that monitor the federal

district and appellate court dockets for Commission filings. Although these trade publications

may not be in common circulation, they are widely read by participants in the energy industry.

This likely publication would substantially jeopardize Plaintiff's reputation. Once that disclosure

is made, "the cat is out of the bag" and Plaintiffs can never recapture the confidentiality to which

they are entitled under the Commission's regulations and other law. *In re Sealed Case*, 237 F.3d

at 664 (finding that proceeding on public docket would mean subjects' ability to protect

confidentiality "would be irrevocably impaired"). The disclosure will likely injure Plaintiffs'

business and will unquestionably damage their reputations in a manner that cannot be repaired.

*See Mova Pharmaceuticals*, 140 F.3d 1060 at 1067 n.6 (noting the District Court's finding that

agency action which resulted in a small business's loss of market position sufficiently

demonstrates severe economic impact, and thus irreparable harm); *Long Island Lighting Co. v.*

*County of Suffolk*, 628 F. Supp. 6554, 661 (E.D.N.Y. 1986) (destruction of business constitutes

irreparable harm). *See also Jacksonville Port Authority v. Adams*, 556 F.2d 52 (D.C. Cir. 1977)

(finding injury to be irreparable where plaintiff lost almost $300,000 rendering success of airport construction project in doubt).

Finally, as noted above, the Commission's own policy statements expressly recognize the harm that can result from publication of these types of matters.  The issue of irreparable injury is really beyond reasonable dispute.

3.      **An injunction will not substantially harm the Commission.**

The Commission will not suffer any injury or prejudice as a result of the temporary restraining order and preliminary injunction.  The Commission will still be able to make the same arguments and seek the enforcement of its subpoena as it would be able to do publicly. The only difference is that the investigation as a whole, and all attendant documents and filings, will remain under seal.

4.      **The public interest will be furthered by an injunction.**

Finally, the Court should find that the injunction sought here is in the public interest.  The public's interest is served by a process that does not unfairly expose the subjects of a nonpublic investigation to public disclosure about the allegations underlying that investigation.  Indeed, as a general matter, the promotion of the privacy interests that underlie the Commission's regulations providing for nonpublic investigations are in the public interest, and the sealing of the Commission's proceeding will serve that interest.

## CONCLUSION

For the foregoing reasons, the Court should grant the temporary and preliminary injunctive relief that Plaintiffs seek here. Plaintiffs request that the Court hear oral argument on this motion.

Dated:  February 25, 2014
Washington, D.C.

Respectfully submitted,

A. Jeff Ifrah
(DC Bar ID 456661)
David B. Deitch
(DC Bar ID 426218)
Ifrah PLLC
1717 Pennsylvania Ave, N.W.
Suite 650
Washington, D.C. 20006
202.524.4140
jeff@ifrahlaw.com

Todd Mullins
(DC Bar ID 429539)
McGuireWoods LLP
2001 K Street NW, Suite 400
Washington, D.C. 20006
202.857.1752
tmullins@mcguirewoods.com